# Commonwealth *v.* Hettig, Appellant.

*Election law—Criminal law—Conspiracy—Election officers.*

1. Election officers may be indicted as individuals for a conspiracy to defraud as election officers, either by not counting the votes properly, or by adding names to the voters' list, or by making a false return.

*Jury—Challenge—Criminal law.*

2. Where in a criminal case the commonwealth passes a juror under a wrong impression as to his name, and thereafter before the defendant has taken any initiative as to a challenge, the trial judge permits the commonwealth to reconsider the passing of the juror and to exercise the right to challenge, such action of the court cannot be used as a basis for assignment of error on an appeal from a conviction of the defendant.

*Criminal law—Arrest of judgment—Record—Assignment of error.*

3. An assignment of error from a refusal of a motion for arrest of judgment in a criminal case, will not be considered unless it is based on some matter appearing on the face of the record.

Argued March 6, 1911.    Appeal, No. 28, March T., 1911, by defendant, from judgment of Q. S. Luzerne Co., Sept. T., 1910, No. 1½ on verdict of guilty in case of Commonwealth v. Stewart Hettig, Richard Thomas and James J. Moore.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.    Affirmed.

Indictment for conspiracy to violate the election laws. Before STAPLES, P. J., specially presiding.

At the trial the jury returned a verdict of guilty against the appellants.

On a motion to arrest judgment STAPLES, P. J., filed the following opinion:

On June 4, 1910, there was a primary election held in the borough of Warrior Run, at which were present Stewart Hettig, judge; Richard Thomas, inspector; James Moore, inspector; John Stinson and N. H. Jenkins, clerks; sitting as an election board from 2 P. M. to 8 P. M.; Edward Williams acting as clerk in place of said N. H. Jenkins a part of the time.

There were 141 votes cast, as appears by the proper names on the voting list, 155 ballots found in the ballot box, but there were written upon the voting lists, as having voted, the names of 163 voters, the discrepancy in names being made up of men who did not vote on that day. Fifteen of the men whose names were included in this list testified that they did not vote on that day, and the other persons, as testified to, were not there on that day—one was in Wales, one in Rome, several were dead, and the rest either did not live there, or else never had been known. A number of these names were written on the voters' list in alphabetical order.

The tally sheets and return sheets as signed and handed in showed marked falsification in the returns, e. g.

For the Democratic ticket there were cast forty-five ballots. They were returned as follows:

### STATE SENATOR

| Name | Ballots | Returned |
|------|---------|----------|
| James | 29 | 41 |
| Leib | 1 | 0 |
| Lewis | 8 | 4 |
| Dewitt | 5 | 0 |
| | 43 | 45 |

and for all the other offices, ballots were counted and returned as they appeared to have been cast.

For the Republican ticket, there were cast 112 ballots and returned as follows:

### CONGRESSMAN

| Name | Ballots | Returned |
|------|---------|----------|
| Barrett | 5 | 3 |
| Bowman | 96 | 114 |
| Robinson | 7 | 1 |
| | 2 | 0 |
| | 110 | 118 |

### STATE SENATOR

| Name | Ballots | Returned |
|------|---------|----------|
| James | 102 | 106 |
| Leib | 2 | 1 |
| Lewis | 6 | 6 |
| | 2 | 0 |
| | 112 | 113 |

### REPRESENTATIVE

| Name | Ballots | Returned |
|------|---------|----------|
| Fox | 2 | 1 |
| McGowan | 88 | 108 |
| Swartwood | 19 | 9 |
| | 1 | 0 |
| | 110 | 118 |

DELEGATE TO STATE CONVENTION

| Name | Ballots | Returned |
|---|---|---|
| Bullock ......................... | 3 | 2 |
| Keck ......................... | 13 | 3 |
| Thomas......................... | 93 | 114 |
| | 2 | 0 |
| | 111 | 119 |

and which was, in fact, robbing, in the several instances, one man of the votes cast for him, and giving to another votes never cast for him; and, considering the comparatively small number of votes cast, it was a bold attempt to defraud the voters.

All of the election board, including Williams, were indicted for conspiracy in violation of the election laws under three counts. The first, relating to the attempted fraud upon Michael F. Shannon; the second, in causing to have written on the list of voters the names of a large number of voters as having voted, who, in truth, did not vote; and the third, having unlawfully and fraudulently procured and made a false and fraudulent return, all being to the prejudice, inter alia, of the electors of said election district.

There was no real dispute at the trial about the facts, and the court would have sustained a verdict of guilty against Stinson and Jenkins if they had been convicted. No such glaring fraud could have been perpetrated if these men had been acting honestly and performing the duties of their offices according to law. The jury, however, saw fit to acquit Jenkins and Stinson, the clerks, and convict Hettig, the judge, and Thomas and Moore, the inspectors, under the second count. Why the verdict was not guilty under the third count, we are at a loss to understand, but are satisfied with a verdict under any count under the indictment on which they were tried. The jury must have thought Moore did know about the voting list, although the court was of a different opinion, and, under the circumstances, we are inclined to take their view.

The convicted defendants have moved in arrest of judgment for a new trial, upon three grounds, viz.:

1. The indictment does not aver an indictable offense.

2. The court erred in permitting the commonwealth to challenge peremptorily the juror, John Howland, after said juror had been accepted by the commonwealth and passed to the defendant.

3. The testimony taken in the contested election of Michael Shannon versus Patrick McKeever for representative, was adduced before the grand jury in the above-stated case.

First reason:

Under the first reason assigned by the defendants, counsel contended that the defendants were indicted as individuals and not as election officers, and that the Uniform Primaries Act of February 17, 1906, P. L. 36, did not provide for any violation of the law except by election officers, and therefore the defendants could not be indicted as individuals for a conspiracy to either defraud as election officers by not counting the votes properly, or by adding names to the voters' list or by making a false return.

This question, to our mind, has been so clearly settled that it seems almost a work of supererogation for us to add anything further in the way of an opinion upon it. But, as it is such a vital matter, we feel that it will do no harm, and probably good, to reiterate the reasons why an indictment of this kind is good and sufficient.

The case of Com. v. McHale, 97 Pa. 397, so well known to the profession, is the leading case upon the question of conspiracy to violate the election laws. It holds that:

"Offenses against the purity and fairness of public elections are crimes at common law and indictable as such," and that an indictment charging a conspiracy to commit certain offenses against the election laws was good, and we gather from it that it is immaterial whether the persons who so conspired to violate the election laws were election officers, or individuals.

And, as following and approving the decision in the

aforesaid case, it is held in Com. v. Randolph, 146 Pa. 83, that:

"The test whether or not a certain crime is a crime at common law, is, not whether precedents for so treating it can be found in the books, but whether it injuriously affects the public policy and economy."

And, as having a direct bearing upon the present case, attention is called to the case of Com. v. Young, 16 Pa. Superior Ct. 317, in which, inter alia, Judge PORTER said:

"Primary elections for the purpose of nominating candidates for state offices come within the express protection of the statute;" and speaking of a false count of the ballots cast for judge of a primary election and a false certificate as to the person elected, he further said:

"If the acts of the defendant did not constitute an offense under the statute, were they indictable upon the principles of the common law? This question is to be determined not upon whether a precise definition of the offense can be found in the text-books, or in the adjudged English cases, for elections of this character were unknown at the time of our separation from the mother country, but we must look to the principles upon which the common law rests. Many acts which, necessarily, tend to corrupt the government and affect public rights are punishable at common law in the absence of any express statute providing a penalty. . . . Every qualified voter at an election authorized by law is entitled to give one vote for every officer to be elected. The person who gives more infringes and violates the rights of other voters, and he who by a false and fraudulent computation of the votes apparently changes the result of an election violates the rights of all the electors; and, in the absence of a statutory provision for such an offense, the common law gives an indictment: Com. v. McHale, 97 Pa. 397, 407. . . . The Acts of June 19, 1891, P. L. 349, June 10, 1893, P. L. 419, and July 9, 1897, P. L. 223, regulating the nomination and election of public officers, recognize the rules and regulations of political parties and make them a part of the ma-

chinery provided by law for the election of public officers. These acts of assembly give to political parties which have polled the required number of votes, the right to certify nomination for public officers, and require the expenditure of public money to print the names of the candidates so certified upon the official ballot. . . . It is clearly to the interest of public society that the proceedings which, under the rules of the several parties, lead up to the certification of these nominations should be free from fraud and corruption. These acts of assembly are election laws of the commonwealth within the meaning of sec. 9, art. VIII, of the constitution: Leonard v. Com., 112 Pa. 607. Any willful act, done with fraudulent intent, which falsifies the result of any election, which under the rules of the party is preliminary to the certification of such nominations, must necessarily affect public society. The crime is not merely against the voters of a particular party, but it is against all the electors in whose hands the official ballot is placed, and against the public whose money is expended in the printing of a ballot—the nominations upon which are tainted with fraud. In the absence of a statute such a crime is indictable at common law.

The Act of 1906, P. L. 36, went very much farther in its provisions relating to primary elections. The intention of the legislature was to make all primary elections of all parties uniform, and it is very full and exceedingly specific in the requirements and provisions relative to the holding of primary elections, and, under the cases cited, there seems to us no question about the sufficiency of an indictment charging conspiracy to violate any of the provisions of this act, or of any primary election, in any of the ways as included in the offenses charged in the indictment under consideration; and, for this reason, we say that there is no merit in the first reason assigned by the defendants.

Second reason:

As to the second reason of the defendants, alleging error upon the part of the court for sustaining the peremptory challenge of John Howland, a juror, after he had been

passed to the defendants for challenge, the counsel for the defendants relied upon the case of Com. v. Evans, 212 Pa. 369, the syllabus of which is as follows:

"Where counsel for defendant in a criminal case, after having examined a juror turns him over to the commonwealth for cross-examination, and the commonwealth accept the juror without cross-examination, the defendant will not then be allowed peremptorily to challenge him."

The facts in the present case are so dissimilar to those in Com. v. Evans, that the reason given in the latter case has no bearing upon the present one. The facts with reference to this challenge were as follows:

From the record:

"John Howland, a juror, having been sworn on his voir dire and examined by commonwealth's counsel and accepted by commonwealth's counsel, Mr. Valentine, district attorney, states to the court as follows: I thought the name was John B. Howell and it turns out to be John Howland. I accepted the juror under that impression and asked the privilege of re-examining him.

The Court: We will give you the privilege.

Mr. Valentine (to juror): For whom do you work? A. John A. Redington.

Mr. Valentine: Challenge.

Mr. Lenahan: We object, the juror having been passed to the defendants, the commonwealth cannot interpose a peremptory challenge now.

The Court to the court reporter: You may note the passing of the juror was done under a wrong impression as to his name and before the defendants or their counsel had taken any initiative as to challenging or asking questions, the counsel for commonwealth informed the court of their mistake and asked the privilege of reconsidering their passing of the juror and their exercising their choice of challenge, which the court under the circumstances permitted.

While it does not appear as a part of the stenographer's notes, it does appear from the jury list which was present

in court, that the man for whom John B. Howell was taken was a waiter (as he testified), in the employ of John A. Redington. While John B. Howell, about whom the mistake was made, was a merchant and the district attorney might well make a distinction, in the consideration of his challenge, in the different occupations of the two men.

This case differs from the case of Com. v. Evans, supra, in this, that there was the element of unfairness to the defendant in the former case which is entirely lacking in the latter. In the case of Com. v. Evans, the defendant had accepted the juror and turned him over to the commonwealth for cross-examination and the commonwealth had accepted him and then after the defendant found out how the commonwealth viewed the juror, he asked the right to peremptorily challenge him. There was nothing of that kind in the present case. There was no unfairness at all exercised towards the defendants. The court is satisfied that the district attorney acted entirely under a mistaken idea as to the two men, and he, informing the court of this before any action whatsoever was taken by the defendants, or their counsel, no harm was done to the defendants. They were deprived of no right and no advantage of any kind was taken of them, and we clearly think that there was no error committed by the court in this respect.

Third reason:

The third reason assigned by counsel for defendants was upon this state of facts: During the term of the grand jury, which found the indictment in the present case, an indictment was presented against Edward Williams, one of the above-named defendants, and in the hearing of which certain testimony of his given at the contested election of Michael Shannon against Patrick McGeever, was read before the said grand jury.

Almost at the close of this case in chief of the commonwealth, Mr. Lenahan, one of defendants' counsel, stated to the court as follows: "For the first time in this case it has become known to the defendants and their counsel,

that testimony was taken before the grand jury in the hearing of those indictments for the purpose of procuring true bills. The motion now is that these indictments be quashed for that reason, it being the first knowledge that was brought to us of that fact. I purpose to embody this in an affidavit I want to make out more fully," which motion was denied.

During the argument, however, it was admitted by the district attorney that the testimony of Edward Williams given in the said contested election case was read before the grand jury, but there was no other testimony or statement which connected that testimony with the present case, nor was it clear whether or not it was read before the present indictment was found or afterward. As far as the effect upon Edward Williams is concerned, it is immaterial for the reason that the court directed the jury in the present case to acquit Williams for the reason, that in its opinion there was not sufficient evidence to sustain a conviction. And it is difficult to see how it could so injuriously affect the other defendants as would have warranted the court in the quashing of the indictment as asked for. There was nothing before the court either at the time the motion was made to quash the indictment, nor since, which threw any light upon how Edward Williams came to give this testimony. It does not appear that he was compelled to do so, and, in the absence of any testimony to that effect, it is our duty to consider that he gave the testimony not under compulsion, but voluntarily, and having given it voluntarily, it does not come under the provisions, nor was it in violation of sec. 10, art. VIII, of the constitution.

A person cannot be compelled to give any testimony which might incriminate him, or lead to his conviction for any offense in connection therewith, but it needs no citation of authorities to sustain the proposition that, if a person in a collateral matter voluntarily gives testimony, that testimony can afterwards be used in the criminal courts for the purpose of convicting the person, so testi-

fying, of a criminal charge; and we see nothing in the present proposition to distinguish it from the cases of confessions used for the purpose of conviction. There was no evidence that it influenced any grand juror, nor that it was given any consideration in the finding of the present case.

Substantially this same question has been considered in the case of Com. v. Richardson, 42 Pa. Superior Ct. 337, wherein it was held:

"The mere fact that testimony was given by a witness in the judicial proceedings against a person charged with the offense of bribery is not a conclusive bar against the use of that testimony against a witness in a subsequent judicial proceeding against him. It is only a bar where it was given under some sort of compulsion. The words 'such testimony' in sec. 32, art. III, does not mean any testimony, but such as a person may have been 'compelled to testify.'

"Where the record of a prior case fails to show that the accused in the later case testified in obedience to a subpœna, or under any compulsion, and also fails to show that he demurred to answer any question upon the ground that the answer might incriminate him, or on any other ground, the prior testimony of the accused may be used against him."

Chief Justice RICE handed down the opinion in that case, and there is nothing that we could add to it, and, in the light of the commonwealth having the right to use this kind of testimony against the man who gave it, the defendants would have no good ground to urge the quashing of the indictment in the present case because Williams' testimony was used before the grand jury. There is no reasonable theory which would have supported the court in the granting of the motion to quash this indictment for the reasons stated.

And now, November 10, 1910, for the reasons above stated, the rule to show cause why the judgment in the above case should not be arrested, is discharged; and, for

406    COMMONWEALTH *v.* HETTIG, Appellant.

Opinion of Court below—Opinion of the Court.    [46 Pa. Superior Ct.

the same reasons, the rule to show cause why a new trial should not be granted, is discharged.

Judgment of sentence was passed. Defendants appealed.

*Errors assigned* were as follows:

1. The learned court erred in refusing to quash the indictment and to arrest the judgment for the reason that the indictment did not set forth an indictable offense.

2. The learned court erred in permitting the commonwealth to peremptorily challenge the juror, John Howland, after said juror had been accepted by the commonwealth and passed to the defendant.

3. The learned court erred in refusing to arrest the judgment for the reason that the indictment was unlawfully found, because the testimony of Edward Williams, one of the defendants, taken in the contested election of Michael Shannon against Patrick McGeever for representative was adduced before the grand jury, the constitution inhibiting the use of such testimony against the defendant.

*Thomas F. Farrell*, with him *W. H. Hines*, and *John T. Lenahan*, for appellants.

*Z. Alfred Valentine*, district attorney, for appellee.

PER CURIAM, April 17, 1911:

The first two assignments are overruled for the reasons given by Judge STAPLES, specially presiding, in his opinion discharging the rule for new trial and for arrest of judgment. In addition to the reasons given by him in discussing the question sought to be raised by the third assignment, it should be noticed that the facts upon which the assignment is based do not appear of record, and the rule is that a motion in arrest of judgment must be based on some matter appearing on the face of the record: Delaware Division Canal Co. v. Commonwealth, 60 Pa. 367; Com. v. Duff, 7 Pa. Superior Ct. 415; Com. v. Zayrook, 30

Pa. Superior Ct. 111. Moreover, it is not alleged in the assignment that the testimony of Williams was given under compulsion, either actual or constructive; nor is that testimony set forth in the assignment or anywhere in the record, so as to enable us to judge whether its production before the grand jury was prejudicial to any right of these appellants. It is thus seen that this assignment must be overruled for substantial as well as technical reasons.

The judgment is affirmed and the record is remitted to the court of quarter sessions of Luzerne county with direction that the judgment against each of the appellants, Stewart Hettig, Richard Thomas and James Moore, be fully carried into effect, and to that end it is ordered that each of said appellants forthwith appear in that court, and that he be by that court committed to serve and comply with such part of his sentence as had not been performed at the time this appeal was made a supersedeas.